CASE 101—COUNTY COURTS, MANDAMUS—April 3, 1885.

# The Commonwealth for &c. v. Boone County Court.

APPEAL FROM BOONE CIRCUIT COURT.

1. A statute is repealed only when a subsequent law so provides or by necessary implication.
2. The repeal is only effectual when the statutes are so inconsistent with each other as not to be reconciled.
3. When an inferior tribunal, invested with both judicial and ministerial functions, or only the former, refuses to act, or to entertain a question as to which it has a discretion, it should be compelled to act by *mandamus.*

·4. If it acts, although it may be mistaken in its judgment, it can not be compelled by *mandamus* to act differently.

W. LINDSAY AND L. C. NORMAN FOR APPELLANT.

1. A statute can only be repealed by an express provision of a subsequent act or by necessary implication.

·2. Virtual repeals are not favored by the courts. (Commonwealth v. McCain, 14 Bush, 525; 3 Monroe, 80; 8 Bush, 609.)

·3. If the Boone County Court acted judicially, it might be claimed that such was the result of its finding of fact.

4. But it acted in its ministerial capacity.

·5. The order *nisi* was erroneous, and the court should have awarded a peremptory mandamus. No ministerial officers can be excused from doing their duty by recitals contained in their refusal. (13 Bush, 835; 3 Met., 498; 14 B. Mon., 96; 12 Bush, 208.)

WARREN MONTFORT AND S. W. TOLIN FOR APPELLEES.

1. If there is any law vesting in appellees the right to construct bridges and levy the cost of such construction upon the county, they have a broad judicial discretion in determining when that right accrues to the public, and such rights can not be determined upon reports of road surveyors.

·2. When the county court acts, even though their refusal to build a bridge be erroneous, no mandamus will lie.

·3. By special legislation the General Statutes, so far as relates to Boone county, were repealed. (General Statutes, sections 29 and 35, chapter 94, pages 765 and 766; General Statutes, section 1, article 16, chapter 28; Acts 1873-4, chapter 129, volume 1, page 167; Acts 1881, volume 1, chapter 764, page 1118, sections 1, 3, 5, 7, 8; General Statutes, ·chapter 106, article 1, section 1; Louisville v. McKean, 18 B. Monroe, pages 12 and 17; Nepp v. The Commonwealth, 2 Duvall, page 546; 2 Bibb, page 573; Civil Code, page 97, section 477; City of Henderson v. Sandefur, 11 Bush, pages 552, 553; Page Second Auditor v. Hardin, 8 B. Monroe, pages 656, 672; Hoglan v. The Commonwealth, 8 Bush, page 148; 79 Kentucky Reports. page 269; General Statutes, chapter 28, section 11, article 17; Ohio County Court v. Newton, 79 Kentucky Reports, page 267.)

*On Repeal of Statutes.*—Acts 1873-4, volume 1, chapter 129. page 167; General Statutes, chapter 94, sections 129 and 35; Hickman v. Littlepage, 2 Dana, page 345; Gorham v. Luckett, 6 B. Monroe, page 153 ·—near the bottom; Morawetz on Private Corporations, section 468; Acts 1881, volume 1, page 1118; General Statutes, chapter 94, section 25; Bosley v. Mattingly, 14 B. Monroe, page 90; Adams v. Ashby, 2 Bibb, 97; Mason v. Rogers, 4 Littell. page 377; Gifford v. The Commonwealth, Ky. Law Reporter, volume 2, page 437.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Chapter 28, article 16, of the General Statutes, says that the "county courts have *jurisdiction* to lay and superintend the collection of the county levy, erect and keep in repair *necessary* public buildings, *bridges* and other structures, and superintend the same."

Section 29, article 1, chapter 94, provides that "if in the opinion of the surveyor the task of erecting or repairing a bridge or causeway be too onerous to impose on his force, he may report the case to the county court, whose duty it shall be to provide by proper means for the *necessity;*" while section 35 reads thus: "When a bridge or causeway shall be *necessary* on a road, and the expense of erecting or repairing the same is too great to impose on the precinct, the county court of the county shall have the same erected or repaired, and levy the cost thereof on the county."

The provisions *supra* of the general law were not repealed either expressly or by necessary implication as to Boone county by the act of the Legislature, approved January 29, 1874, entitled "An act relating to opening and repairing roads in Boone county," or by that approved March 30, 1882, entitled "An act to amend and reduce into one all the laws relating to opening, repairing, keeping in repair, and levying and collecting taxes for the benefit of public roads in Boone county;" nor was the general law, as found in chapter 94 of the General Statutes, entitled "Roads and Passways," repealed as to said county by said two acts, save so far as its provisions are in conflict with them. They expressly provide that "acts in conflict"

with them are repealed. It is true that the one first above named provided that the general road laws of the State should remain in force entire as to Boone county until April, 1875 ; but this was because the act, if ratified by a majority of the voters of the county at the succeeding August election (as it had to be, to be operative), was not, according to its provisions, to be put into operation until April, 1875, when, if so ratified, it repealed the general law to the extent that it conflicted with it.

To show that this construction of the acts in question is correct, but one illustration need be given. The one approved March 30, 1882, provides that the surveyor of each road precinct shall notify each person within it "who is required by law to work upon public roads" of the time when, and place where, he must do so, and a penalty is provided against any person "liable to work upon public roads" who fails to comply with the notice ; while the other requires that in the allotment of road districts each shall contain the same number of persons that are by law required to work on the roads, and also provides for the levy of a poll-tax upon them ; and yet neither act prescribes the persons who may be required to so work, and their provisions in the main are nugatory, unless supplemented by the general law upon the subject so far as they do not conflict. Neither of them provide for the erection or original construction of bridges, and speak only of their repair.

The rule is well established that a statute is repealed only when a subsequent law expressly so provides, or by necessary implication, and the latter is not favored.

and is only effectual when they are so inconsistent with each other as to be incapable of reconciliation ; and when one is local in its application, and the other is general, they will both be upheld as a consistent whole so far as they are not absolutely inconsistent.

The appellants first presented a petition to the Boone County Levy Court asking it to erect a bridge, at a cost of about $5,000, over Wolfer creek, about one and a fourth miles from where it empties into the Ohio river, and upon the county road leading from Bellevue to Petersburg, a distance of about seven miles. The creek being the line between two road precincts, the petition was accompanied by the reports of the surveyors of those precincts, stating that the erection of the bridge was necessary, and that its construction by the two precincts would be too onerous upon them. The ground of the application was that the rise of water in the creek from freshets and the back water from the Ohio river often rendered travel over the road impossible.

The court of claims refused to consider the matter. This suit was then brought to compel the levy court, by mandamus, to build the bridge. The demurrer to the petition and amendments to it admits as true the matters therein alleged, and when so considered they authorized the mandamus, if the county levy court had a mere plain duty to perform, which was absolutely enjoined by law, or was required to act ministerially only, in a matter as to which it had no judicial discretion. The circuit court, acting doubtless upon the idea that the county court had such discretion, entered an order requiring it at a certain

time to hear the matter, and make such order as it might then deem proper and expedient.

This action was proper if the belief of the court was correct as to the power of the county court, because it had refused to even hear the matter or exercise its discretion.

If an inferior tribunal has a discretion and proceeds to exercise it, then its discretion should not be controlled by mandamus; but if the subordinate public agent, whether it be invested with both judicial and ministerial functions, or only with the former, refuses to act in any way or entertain a question as to which it has a discretion, and which the law has enjoined upon its consideration, then obedience to the law should be enforced by mandamus, and the agent compelled to act, if there is no other legal remedy; but in such a case, its discretion or judgment must be left free to act and can not be controlled in a particular direction.

The performance of a plain, positive duty may be compelled by mandamus, but where there is a discretion as to the result that may be arrived at, it can not be controlled. Thus, if the judge of an inferior court captiously refuses to hold a court, he may be compelled to do so; and the rule applies equally to all officers, whether strictly judicial or not, if invested with a discretion. (Warren County Court v. Daniel, 2 Bibb, 573; Ohio County Court v. Newton, 79 Ky., 267; Hull v. Supervisors, 19 John., 259; Wilson v. Same, 12 *Ib.*, 414.)

Ordinarily, however, the use of the writ of mandamus is to compel an executive or ministerial officer to perform an act, or omit to do an act, the perform-

.ance or omission of which is enjoined by law; and it is so defined by our Code of Practice.

In this instance the county court, in obedience to the ·order of the circuit judge, heard the question and re-fused to order the erection of the bridge upon the ground that it was not a necessity.

It is alleged in an amended petition that the matters recited in its judgment as facts are untrue; but it is not alleged that it acted captiously or corruptly. Moreover, it appears that when the matter was heard, testimony was introduced, but the appellants declined to appear, or offer any, and there was no refusal of a full hearing by the county court.

· The general law upon the subject being, as we have seen, unrepealed, the question then recurs, did the county court have a judicial discretion in the matter? If so, then although mistaken in its judgment, as we must assume it was, owing to the admission, by reason of the demurrer, of the allegations of the plaintiffs' pleadings, yet it can not be compelled by mandamus to act differently.

The exercise of the power to grant this writ in both England and this country has generally been confined to clear cases of ministerial duty; and the courts have refused to coerce judicial discretion. It is well settled by repeated decisions of the Supreme Court of the United States that it will not interfere to compel an inferior tribunal to do an act either relating to the practice in it, or the merits of a case as to which it has a judicial discretion, even if it has erred in the exercise of that discretion.

The unrepealed statute in this instance gave to

the county court the *jurisdiction* to erect *necessary* bridges. Some one had to exercise a judgment as to their need. It is not reasonable to suppose that upon the mere report of a surveyor, whose powers are quite limited, the county court was compelled to act, and perform a mere ministerial duty. If so, one man could bankrupt a county in the face of the opinion of the court which is especially vested with the control of county affairs; and it seems to us that section 35 of the statute *supra* is clearly explanatory of the question, and gives to the county court the power to erect bridges when it may deem them necessary; and that the law requires the surveyor's report in order that the attention of the court may be called to the matter and investigated by it.

It certainly is invested with a judicial discretion as to opening a road, and the reason for it applies with equal force to the erection of bridges or other county improvements, the making of which is not particularly enjoined by law. If it were a mere plain and positive duty, devoid of discretionary power, or of a ministerial character, like that requiring the trustees of a town to repair a street when out of repair, and for which they are liable to indictment in case of failure, or if it were a question between two adjoining counties as to the expediency of building a bridge over a water-course between them, in which case the statute expressly authorizes the circuit court to arbitrate between them by means of the writ of mandamus, a different question from the one now presented would be before us. The action of the county court may impose a hardship upon the appel-

lants; but both precedent and principle forbid us from interfering by mandamus with what may have been a mistaken judgment of the county court.

Judgment affirmed.