### Educational Division Board No. 1, et al. v. Butler.

(Decided October 8, 1913).

#### Appeal from Floyd Circuit Court.

1. Schools and School Districts—Teacher—Nomination of Teacher— Election of.—Where, under Section 5 of Chapter 25 of the Acts of 1912, a sub-district school trustee failed to nominate a teacher for his sub-district at the regular meeting held on the first Saturday in June, it was the duty of the chairman of the Educational Division Board to immediately request such sub-district trustee to

nominate a teacher for his sub-district; and an election of a teacher by the Educational Division Board without having requested the nomination of a teacher by the trustee of the sub-district, was invalid.

2.  Schools and School Districts—School Board—Meeting of—Election of Teachers.—Under Section 5 of Chapter 25 of the Acts of 1912, which requires the Educational Division Board to meet on the first Saturday in June for the consideration of applicants and the election of teachers; and further provides that it may meet on the last Saturday in July and August in each year for the purpose of filling vacancies; and generally at such other times as the chairman may designate; and the board met on the first Saturday in June and adjourned to meet on the 28th day of June, it had power to elect a teacher at the adjourned meeting.

3.  Schools and School Districts—Election of Teacher.—Under Section 5 of Chapter 25 of the Acts of 1912, an Educational Division Board may elect a teacher by the concurrent votes of a majority of a quorum of the board.

A. R. CRISLIP and S. C. FERGUSON for appellants.

B. F. COMBS and MAY & MAY for appellee.

Opinion of the Court by Judge Miller—Affirming.

Educational Division Board No. 1, of Floyd County, is composed of twenty-four common school district trustees. As required by law, a meeting of said board was held on June 7, 1913, that being the first Saturday in June, for the purpose of electing teachers for the several schools in said educational division. Twenty-two of the twenty-four trustees were present, B. P. Hereford, the trustee for sub-district No. 2, being one of the absentees. Hereford failed to nominate or recommend a teacher for his sub-district, as he was required by law to do, whereupon the Educational Division Board elected Josie Harris, a teacher of said county possessing all of the qualifications necessary to teach said school, and entered into a written contract with her, as is required by law. The Educational Division Board then adjourned to meet again on June 28, 1913. At the adjourned meeting on the 28th, sixteen of the twenty-four members of the board were present, including Hereford. At the adjourned meeting Hereford nominated the appellee, Elizabeth Butler, for teacher in his school, and ten of the sixteen trustees then present voted to elect her. The other six trustees refused to vote for her, because a contract had previously been made with Josie Harris, the appellant, and for the further reason that they did not think

the board had authority to employ or contract with a teacher, at an adjourned meeting. The chairman and secretary of the division board refused to make a contract with the appellee, Elizabeth Butler, evidently because they had previously made a contract with the appellant, Josie Harris, to teach the same school, and for the further reasons that Elizabeth Butler had not received the votes of a majority of the trustees of Educational Board No. 1, and that she had not been nominated and voted for on either the first Saturday in June, or the last Saturday in July, or the last Saturday in August, as required by section 5 of chapter 25 of the Acts of 1912, which amended subsection 6 of section 4426a of Carroll's Kentucky Statutes of 1909.

That statute reads as follows:

"It shall be the duty of the sub-district trustee to nominate and recommend in writing to the division board, one or more teachers for each school in his sub-district, and with said nomination and recommendation he shall convey the teacher's credentials and any objections, remonstrances or petitions that may be offered, in writing, to the election of said teacher or teachers, and the board shall elect for each sub-district a teacher or teachers nominated by the trustee thereof, when such teacher possesses the necessary qualifications and no reasonable objection is offered.

"Should the division board reject any nomination or should any trustee fail to nominate for his sub-district, the chairman of the division board shall immediately notify such sub-district trustee and request further nominations. The divison board in each educational division shall meet for the consideration of applications and the election of teachers on the first Saturday of June of each year.

"Qualifications of teachers shall be determined as provided by law. Said educational division board may meet on the last Saturday of July and August in each year for the purpose of filling any vacancies which may exist. Said division board may meet at such other times as the chairman may designate.

"Teachers shall be elected for one school year, but be removed by the division board of the educational division in which they are employed, at any time subject to the approval of the county superintendent, for incompetency, neglect of duty or immoral conduct.

"Contracts for the service of all teachers shall be in writing, signed in duplicate by the teacher and by the chairman and secretary of the division board of the division in which the teacher is employed. Upon organization of said board, one of the members shall be chosen as secretary, who shall keep a correct record of all proceedings, which shall be a public record."

The chancellor was of opinion, (1) that the contract of June 7, 1913, between the Educational Division Board and the appellant, Josie Harris, was null and void; (2) that under the act of 1912, providing for the employment of teachers as above set forth, the Educational Division Board had the right to employ a teacher for said sub-district at the adjourned meeting of June 28th; and (3) that in order to elect a teacher it is not now necessary for the applicant to receive the votes of a majority of the members of the division board, but that a majority of a quorum may elect a teacher at any regular meeting, or at an adjourned meeting of a regular meeting. Holding these views, the chancellor entered a judgment directing the chairman and secretary of the Educational Division Board to execute a contract of employment with Elizabeth Butler to teach the sub-district school for the ensuing year, and enjoining and restraining Josie Harris from attempting to teach said school under her contract of June 7th. From that Judgment Josie Harris and the board prosecute this appeal, and urge a reversal upon three grounds: (1) that the election of Josie Harris on the first Saturday in June was a legal election, because it was held on the day fixed by the statute for holding such election, and that trustee Hereford forfeited his right to nominate a teacher when he failed to meet with the board and make his nomination on that day; (2) that the election of Elizabeth Butler as a teacher is void, because the election was not held either upon the first Saturday in June, or the last Saturday in July, or the last Saturday in August; and (3) that the attempted election of Elizabeth Butler is void because a majority of the board did not vote for her.

We will consider the grounds in the order named.

1. Was the election of Josie Harris by the board, without the nomination and recommendation of Hereford, the trustee for that school district, valid?

It will be observed that the statute above quoted makes it the duty of the sub-district trustee to nominate and recommend the teacher in writing, whereupon it be-

comes the duty of the educational board to elect said teacher, provided the teacher possesses the necessary qualifications, and no reasonable objection is offered. The effect of this statute was before this court in Campbell v. Owens, 150 Ky., 686, and in Maynard v. Maynard, 152 Ky., 623, where the right of the trustee to nominate a teacher and the duty of the board to elect him, was emphasized and sustained. Those cases, however, went no further, and did not decide the precise question here presented. The statute provides that upon the rejection of any nomination, or in case the trustee should fail to nominate for his sub-district, as he did fail to do in this case, the chairman of the board "shall immediately notify such sub-district trustee and request further nominations." It was the duty, therefore, of the chairman of the board to notify Hereford of his delinquency, and request the nomination of a teacher for his school district. Under the preceding act of 1908 (Kentucky Statutes, section 4426a, sub-section 6), the division board of trustees had the right to elect all the teachers in the educational division, regardless of the wishes of the sub-district trustee; but one of the chief purposes of the amendment of 1912, as above set out, was to enable the trustee of each sub-district to name, in a large measure, the teacher for the school in his own district. His right to select the teacher can only be defeated by the board when there is a reasonable objection to the fitness or ability of the proposed teacher. Maynard v. Maynard, 152 Ky., 623.

This purpose of permitting the sub-district trustee to nominate the teacher for his own district, is further carried out by the provision of the statute of 1912, which requires the chairman of the board to request him to nominate a teacher whenever he has failed to do so; it does not give the board the right to elect because of the sub-district trustee's mere failure to nominate a teacher. It follows, therefore, that when the board met on June 7th, and Hereford failed to nominate a teacher, the board should have requested him to nominate one; it should not have proceeded to the election of a teacher as it did. If the sub-district trustee declines to nominate a suitable teacher, the board can then elect a teacher, as was done in the Maynard case, *supra*. The election of Josie Harris was, therefore, premature and invalid.

2. Neither do we think there can be any doubt of the power of the educational board to elect a teacher at the adjourned meeting of June 28th. The statute directs the board to meet for the consideration of applications and the election of teachers on the first Saturday in June of each year; and further, that it may meet on the last Saturday of July and August in each year for the purpose of filling vacancies. The board is also given express power to meet at such other times as the chairman may designate. This means that the chairman of the board may call a meeting at any time; and, of course, the board, like any other corporate board, can adjourn to meet on a later designated day, provided there is no statutory prohibition against it. The statute does not say that the nomination of teachers must necessarily be made at the first meeting in June; it merely requires the educational board to meet on that day for the purpose of considering applications and the election of teachers. The board certainly has the power, under the broad provisions of the statute, to adjourn from time to time, in order that it may properly and fully consider applications preparatory to the election of teachers. We are of opinion that the board had the right to elect Elizabeth Butler on June 28th, as it did.

3. Can the Educational Division Board elect a teacher by a vote of less than a majority of all of its members?

By the preceding act of 1908 above referred to, under which teachers were elected by the division board, the votes of a majority of the members of the board were expressly made necessary to effect an election. The amendment of 1912, however, contains no such provision; it merely provides that "the *board* shall elect" for each sub-district a teacher or teachers nominated by the trustee thereof. If we were permitted to search for the reasons of the Legislature in making this particular change, a sound and satisfactory reason could be found therefor in the radical change made in the method of selecting the teacher. Under the act of 1908, where the board had the exclusive right to elect, regardless of the wishes of the district trustee, it was but a reasonable and safe provision which required a majority of all the members of the board to concur in the selection of a teacher. But when the amendment of 1912 transferred the controlling power in the selection of a teacher from the board to the sub-trustee, by giving him the power

to nominate the teacher, and requiring the board to ratify the nomination by an election, it was but reasonable that the board, with its diminished power, should be given the right to act, not alone by a majority of its members, but by the majority of a quorum of the members. Ray v. Armstrong, 140 Ky., 820. This rule was satisfied in the case at bar when ten out of the sixteen members present voted to confirm the nomination of Elizabeth Butler.

The judgment of the chancellor was right, and it is affirmed.